(C. D. 1320)

NATIONAL CARLOADING CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 17, 1951)

*Wallace & Schwartz (Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before LAWRENCE and FORD, Judges; RAO, J., not participating; FORD, J., concurring

LAWRENCE, Judge: An importation from Mexico described on the consular invoice as "Metal Push-Button Sockets" was classified by the collector of customs at the port of Chicago as articles or wares not specially provided for, composed of metal, within the purview of paragraph 397 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 397),

and duty was assessed thereon at the rate of 45 per centum ad valorem. In addition thereto a copper tax of three-fourths of 1 cent per pound was imposed pursuant to section 3425 of the Internal Revenue Code (26 U. S. C. §3425). The imposition of this additional tax is not challenged.

Plaintiff contends that the merchandise is properly dutiable at 40 per centum ad valorem as household utensils within the scope of paragraph 339 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 339), or at 35 per centum ad valorem as electrical articles such as are provided for in the first and third subdivisions of paragraph 353 of said act (19 U. S. C. § 1001, par. 353), or at 27½ per centum ad valorem as machines, finished or unfinished, not specially provided for, within the provisions of paragraph 372 of said act (19 U. S. C. § 1001, par. 372).

When the case was called for hearing, plaintiff offered the testimony of two witnesses. The first, Arthur Vigott, stated that he was connected with the Excell Lamp Co. of Chicago, the consignee of the controverted merchandise. He identified as a representative sample of the importation an article which was admitted in evidence as plaintiff's exhibit 1, and stated that it is known as a push-button or key socket. He testified further that in manufacturing table lamps, a socket is attached to a lamp to control the lighting; that by pushing the button attached to the socket represented by exhibit 1, an electrical circuit is completed or broken. The witness also stated that aside from use in table, floor, and bridge lamps, he had seen articles such as plaintiff's exhibit 1 used in trouble lights, which consist of sockets into which electric-light bulbs have been inserted and at the other end of which is attached wire of the desired length with electric plugs affixed thereto for insertion into electric outlets.

The second witness was Parke K. Linsley, examiner's aid in the Appraiser's Division of the Customs Service at Chicago. He stated that plaintiff's exhibit 1 is representative of metal push-button sockets but not of key sockets, the difference being in the method of operation, a push-button socket being operated by pushing a button in or out whereas a metal key socket has a key which is turned in order to put a light on or off. The witness identified exhibit 1 as a sample of the merchandise described on the invoice in the present case.

Prior to a description of the operation of the imported articles by witness Linsley, there were admitted in evidence a list of interior parts of a metal push-button socket (plaintiff's illustrative exhibit A) and a rough sketch of a cross section of the article (plaintiff's illustrative exhibit B). The structure and operation of the metal push-button sockets in controversy will be understood by an examination of illustrative exhibit B, together with the following description in the testimony of witness Linsley:

The socket is operated by pushing on one or the other of the two buttons, which can be seen to extend from either side of the socket. These buttons are connected by what I call a metal slide. This metal slide is indicated on this diagram as letter "E"—I beg your pardon—the letter "F"; the push buttons are letter "E."

Through this slide, about the center of the slide, is a hole, in which fits a lever, which is illustrated here as letter "G." When the slide and the buttons are to one side this lever, G, pushes up on a floating piece of metal, which is illustrated here as letter "H," making contact physically and electrically with another metal piece on the diagram, letter "J," called interior contact. When those two are in contact there is an electrical circuit completed from a screw contact, letter "L" on the diagram, to which a wire from the outside of the socket is fastened, and carrying the current on through to the central contact, lettered "B" on the diagram, carrying the current through that contact into the light bulb to the center contact of the base of the light bulb.

The circuit is completed through the bulb into the shell of the socket, lettered "A" on the diagram, which is in turn fastened to another screw contact, to which is fastened the second wire leading into the socket. When the push button is pushed in the opposite direction the lever releases this floating metal piece, H, breaking the contact between H and J, floating contact H, and the interior contact, J.

He testified further that he had seen articles such as exhibit 1 used on lighting fixtures, table lamps, drop cords, and extension cords, but did not feel qualified to state their predominant use.

There was then received in evidence as plaintiff's illustrative exhibit C the various parts of a metal push-button socket which in the presence of counsel for the parties the witness had taken apart.

The case was thereupon submitted for decision without the introduction of any testimony on behalf of the defendant.

Although at the trial of the case counsel for plaintiff stated that none of the claims originally made, and set forth, *supra*, was abandoned, no evidence was offered at the hearing in support of the allegation that the imported articles were included within the provisions of paragraph 339, *supra*, for household utensils, nor was any reference made thereto in the brief filed by counsel. It would appear, therefore, that plaintiff has virtually abandoned said claim. Moreover, we find nothing in the record before us which would warrant such a holding.

As to the use of the imported articles, we quote from the testimony of plaintiff's witness Vigott:

X Q. What is the principal use of Exhibit 1; lighting fixtures?—A. This?

X Q. Yes.—A. It is to put on and off your lighting.

X Q. No. Where are they principally used, in lighting fixtures?—A. Yes. Well, lamps.

X Q. In lamps?—A. That is right, trouble lamps.

X Q. Bridge lamps, table lamps, different sort of lighting fixtures?—A. That is right.

From the evidence it is our view that the push-button sockets in controversy are in fact parts of lighting fixtures. We do not consider that their use in trouble and droplights has any effect upon this conclusion, although in the brief of counsel for the plaintiff there is an endeavor to draw a distinction.

The provisions of the first and third subdivisions of paragraph 353 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 353), which plaintiff contends cover the importation in controversy, read as follows:

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

\* \* \* \* \* \* \*

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

Due consideration has been given to the cases cited in the brief of counsel for plaintiff to the effect that it is not necessary for an article to fit exactly any of the exemplars named in the third subdivision of paragraph 353, *supra*, in order to be classified thereunder. However, in view of the expression of our appellate court on articles similar to those before us, the cases cited are not deemed to be controlling of the issue herein.

Reference is made to the case of *United States* v. *N. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, wherein the appellate court affirmed the trial court in holding that Christmas wreaths, made of wood chip, to which was attached a wire cord having a socket for an electric light, there being a plug at one end of the cord designed for insertion in a wall socket, the bulb socket in the wreath being equipped with an element which lights the bulb when the cord is plugged into the wall socket, the wreaths being used generally at Christmas time for decorative purposes, came within the provision in paragraph 353, *supra*, for "articles having as an essential feature an electrical element or device, such as \* \* \* signs."

In the course of its opinion, the court referred to such legislative history as it deemed particularly pertinent to a consideration of the provisions of said paragraph 353, which paragraph was new to the Tariff Act of 1930. Because of the aptness of the court's statements to the present case, we quote therefrom as follows:

Such legislative history as is deemed particularly pertinent here may be stated as follows:

H. R. 2667, which eventuated in the Tariff Act of 1930, as reported from the Committee on Ways and Means and as it passed the House, carried a paragraph numbered 387 which read:

PAR. 387. Illuminating or lighting fixtures, lamps, lamp bases, candelabra, and candlesticks, any of the foregoing and parts thereof, finished or unfinished, not specially provided for, if wholly or in chief value of base metal or alloy, 50 per centum ad valorem; if wholly or in chief value of, or plated with, platinum, gold, or silver, 65 per centum ad valorem.

No special reference was made to it in the report of the Committee on Ways and Means which accompanied the bill, but it was printed in italics in the report, thus indicating it to be a change from the Tariff Act of 1922.

In the report of the Senate Committee on Finance which accompanied the bill when reported to the Senate (Senate Report No. 37, 71st Congress, 1st session, page 19) the following appears:

### Paragraph 387.—Lighting Fixtures

Provision for lighting fixtures has been eliminated with the intent of making them dutiable under the basket paragraph 398.

That number—398—referred to the bill as it was laid before the Senate. In the subsequent renumbering of paragraphs in the act, it became No. 397, under which the merchandise here at issue was classified by the collector. It corresponds to paragraph 399 of the 1922 act.

In addition to the foregoing a statement was contained in that portion of the Senate committee's report relating to paragraph 353 which read:

It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

After the bill, H. R. 2667, had passed both Houses of Congress and before the conferences between managers of the respective Houses were held, the United States Tariff Commission prepared a supplement to tariff information relating to items in the bill which were subject to conference. Reports of the United States Tariff Commission, vol. 29. The discussion of paragraph 353 begins on page 198 of the volume. While that discussion is interesting, such of it as might be regarded as having any bearing upon the instant case is expressed in the committee reports and need not be quoted here.

The discussion of the stricken paragraph 387 of the House bill is found on page 232 of vol. 29, Tariff Commission Report, where it is said, *inter alia:*

Under the act of 1922 and bill as passed by the Senate, lighting fixtures, lamps, candlesticks, and candelabra are dutiable as manufactures of metal, n. s. p. f. In the House bill special provision was made for them, but the same rates of duty were provided that were levied in the basket clause in that bill. In the Senate the paragraph was eliminated, thereby returning the articles to the general provision in paragraph 398.

In the statement of the managers on the part of the House, filed in connection with the conference report (H. R. Report 1802, 71st Congress, 2nd session) at page 64, it was said that the effect of striking out the paragraph 387 (to which the House agreed) was "to throw the items into the basket clause of the metal schedule."

From the foregoing *it is our tentative view that it was not the intention of Congress to include lighting fixtures, even though of an electrical character, in paragraph 353, but that it was intended that they should be classified under what eventually became paragraph 397.* It is true that there is no reference in paragraph 397 to articles having an electrical element, but unless it was intended to include therein some

articles having such an element, much of the discussion of paragraph 353—the electrical paragraph—by the Senate Committee's report above quoted would seem to be without meaning. [Italics supplied.]

From the foregoing it would appear that the push-button sockets here in controversy, being parts of lighting fixtures, should properly be classified within the provisions of paragraph 397 of the Tariff Act of 1930 as articles or wares not specially provided for, wholly or in chief value of metal, of the kind therein made dutiable at 45 per centum ad valorem, as classified by the collector.

Such a conclusion is in accord with the views expressed in *A. N. Khouri & Bro.* v. *United States*, 22 C. C. P. A. (Customs) 28, T. D. 47037, wherein the trial court's opinion was affirmed to the effect that floor and base lamps of various shapes and sizes, in chief value of metal, usable after being wired and equipped with switches, sockets, and bulbs, for electrical lighting, were not encompassed by the provisions of paragraph 353, *supra*. In the *Khouri* case, *supra*, it was stated:

\* \* \* The suggestion is that the wire, with other appurtenances, is suitable for distributing electrical energy and does distribute it.

In the sense that the electric current passes by means of a wire there is a distribution in a broad sense, but as used in said paragraph 353, we think "articles suitable for \* \* \* distributing electrical energy" obviously must be given the technical meaning appertaining to the art, and that means through or over which electrical current merely passes were not intended to be included therein. Electrical distributors have a well-understood meaning in the art. Webster's New International Dictionary gives as one definition of distributor:

An apparatus for distributing an electric current, either to various points in rotation, as in some motors, or along two or more lines in parallel, as in a distributing system.

We do not regard the lamps or lamp bases here at issue as being the type of electrical apparatus, instrument, or device intended to be covered by the paragraph.

The court further stated—

\* \* \* a mere showing that electric wires are put in the lamps, and that bulbs and other appurtenances essential to ordinary electric lamp lighting are placed therein, would not serve to bring the lamps within the paragraph. Such wires, bulbs, switches, and sockets are not the character of elements to which we think the paragraph alludes.

and concluded with the statement that it did not regard the imported articles there in issue as being parts of anything provided for in paragraph 353 of the Tariff Act of 1930, and affirmed the judgment of the trial court.

When this court was subsequently presented with the case of *Globe Lighting Fixture Mfg. Co.* v. *United States*, 16 Cust. Ct. 31, C. D. 980, involving the proper classification of certain "Brass Bayonet Type

Sockets, Electric Lighting Fixtures," it followed the views expressed by the appellate court in the *Minami* case, *supra,* and overruled the plaintiff's claim for classification of the merchandise within the purview of paragraph 353, *supra,* affirming the collector's classification of the importation within the provisions of paragraph 397, *supra.* No appeal was taken from this court's opinion in that case.

The push-button sockets presently in issue are comparable in general construction and in use to the articles the subject of the *Globe Lighting Fixture* case, *supra.* While it is true that the present sockets have an additional feature of a push-button attachment by means of which an electrical circuit is completed or broken, causing a bulb attached to such a socket to be lighted or extinguished, we do not consider them of the character of elements which Congress intended to include within the first subdivision of paragraph 353, *supra,* for "Articles suitable for * * * controlling * * * electrical energy," or within the third subdivision thereof for "articles having as an essential feature an electrical element or device," as contended for by plaintiff.

Consideration must now be given to plaintiff's remaining alternative claim that the metal push-button sockets in controversy are dutiable as machines, finished or unfinished, not specially provided for, within the provisions of paragraph 372, *supra.*

In the brief of counsel for the plaintiff it is stated that the push-button sockets in issue utilize and apply electrical energy or force in that they transmit the motion caused by pushing the buttons to the lever, which lever in turn transmits the motion to a floating piece of metal causing it to go up and down. From the quoted testimony of witness Linsley, *supra,* it is apparent that the effect of the floating piece of metal going up and down is to make and break the electrical contact through which electricity conducted by the wires flows to the center contact of the base of the light bulb and thence to the filaments thereof.

We fail to see, however, how the push-button socket in itself utilizes and applies electrical energy or force. On the contrary, it is a means by which force may be released or checked. In broad principle it is no different from a valve which merely opens or closes the circuit which controls the flow of air, water, steam, or other kind of power.

In the case of *United States* v. *Klingerit, Inc.,* 17 C. C. P. A. (Customs) 472, T. D. 43931, certain metal valves claimed to be of a specialized and somewhat complicated form, used in regulating the quantity of steam, gas, oil, water, or other liquids which may flow through it, operated by hand, but having no automatic feature, were held not to be machines within the definition set forth in the well-known and frequently cited case of *Simon, Buhler & Baumann (Inc.)* v.

*United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. In so holding, our appellate court stated—

*The valves do not function in the development of the energy or force inherent in the element which passes through them, nor in the development of the element itself.* They do not of themselves apply that force to the object upon which it operates. Through the manipulation by hand means of the proper instrumentality, the valves do regulate the quantity of the element which contains the energy, but this regulation of quantity is not synonymous with modification of the force or energy, in the sense that the word "modify" is applicable in the machine definition quoted. [Italics supplied.]

With like effect may it be said of the electric sockets in controversy· The push-button mechanisms, which the plaintiff considers bring the articles the subject of the importation within the provisions of said paragraph 372, do not function in the development of the energy or force inherent in the electricity which passes through them, nor in the development of the electricity itself. By hand pressure they merely serve to open or close an electrical circuit which thereby enables electricity running through the wires from the source of the power to be transmitted to the light bulbs. We therefore do not consider the articles here in issue to be machines as that word has been judicially construed.

Upon the record as made we find that the plaintiff has failed to sustain its burden of proof. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.

### CONCURRING OPINION

FORD, Judge: I concur in the conclusion reached by my associate solely by reason of the decision in *United States* v. *N. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188.