(C. D. 1580)

CRITERION LAMP & SHADE Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 26, 1954)

*William Whynman* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., dissenting

RAO, Judge: The protests enumerated in schedule "A," attached to this decision and made a part thereof, which were consolidated for

the purpose of trial, are before us now as the result of the granting of a petition for rehearing (27 Cust. Ct. 365, Abstract 56092). In the original decision, *Criterion Lamp & Shade Co.* v. *United States*, 26 Cust. Ct. 408, Abstract 55471, it was held that the merchandise here in controversy, certain electrical key sockets, had been properly classified within the provisions of paragraph 397 of the Tariff Act of 1930, as manufactures of base metal, not specially provided for, dutiable at the rate of 45 per centum ad valorem, the assessment of an additional 3/4 of 1 cent per pound as a copper tax, pursuant to section 3425 of the Internal Revenue Code, not being an issue in the case. Accordingly, we overruled plaintiff's claim that the involved articles should have been assessed with duty at the rate of 35 per centum ad valorem pursuant to that portion of paragraph 353 of said act, which reads as follows:

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; * * *.

The record upon which said decision was predicated consisted of a sample of the involved merchandise, which was received in evidence as plaintiff's exhibit 1, and a stipulation of the parties which reads as follows:

Now, the plaintiff stipulates as follows: That Exhibit One, the sample offered in evidence, represents the merchandise in each of the protests which have been consolidated.

Mr. Welsh: So agreed.

Mr. Whynman: We stipulate further that the imported merchandise, as represented by Exhibit One, consists of key sockets to which electric wires are attached, and said imported merchandise is used in turning on and off electric current and also used as a holder for electric bulbs.

Is that agreeable, Mr. Welsh?

Mr. Welsh: So agreed.

Mr. Whynman: It is further stipulated that the trade catalog, of which the catalog of the Midtown Electric Supply Company is illustrative, described merchandise of the same character as wiring devices. The said catalog referred to in the stipulation is copyrighted in 1940, and the said similar merchandise appears on Page 6 of said catalog.

Mr. Welsh: That is also agreed to by the Government.

\*      \*      \*      \*      \*      \*      \*

At the time the instant case was originally before us for decision, there was also being considered by this division of the court, the writer of this opinion not participating, the case of *National Carloading Corp.* v. *United States*, 26 Cust. Ct. 173, C. D. 1320, wherein was involved the question of the proper classification, within the Tariff Act of 1930, of certain metal push-button electrical sockets.

As in the present case, the merchandise the subject of decision in the *National Carloading* case was classified as manufactures of base metal, pursuant to paragraph 397 of said act, and insofar as here material, claimed to be more properly provided for within the provisions of paragraph 353. The respective claims are, however, distinguishable in that plaintiff here invokes that portion of paragraph 353, quoted above, which provides in part for electrical wiring devices, whereas plaintiff in the *National Carloading* case relied upon the first and third provisions of said paragraph, which read as follows:

All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

\* \* \* \* \* \* \*

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

\* \* \* \* \* \* \*

This court in the *National Carloading* case found from the evidence there adduced, which consisted of the testimony of two witnesses, "that the push-button sockets in controversy are in fact parts of lighting fixtures." Based upon that finding, the legislative history pertinent to a consideration of paragraph 353, as set forth in great detail in the case of *United States* v. *N. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, the decision in the said *Minami* case, and the views expressed in *A. N. Khouri & Bro.* v. *United States*, 22 C. C. P. A. (Customs) 28, T. D. 47037, *inter alia*, it held that the there-involved push-button sockets, as *parts of lighting fixtures*, were not within "the character of elements which Congress intended to include within the first subdivision of paragraph 353, *supra*, for 'Articles suitable for \* \* \* controlling \* \* \* electrical energy,' or within the third subdivison thereof for 'articles having as an essential feature an electrical element or device,' as contended for by plaintiff."

Judge Ford and the writer of this opinion concurred in the conclusion reached by Judge Lawrence in the original decision in this case solely by reason of the decision in *United States* v. *N. Minami & Co., Inc., supra*.

Upon the rehearing, counsel for the respective parties amplified their original stipulation by agreeing that:

(1) The electric key sockets are in fact wiring devices and they are known in the trade as wiring devices and they are listed and designated in the trade catalogs as wiring devices.

(2) The said electric key sockets involved in each of these protests are identical.

There was also offered, and received in evidence as plaintiff's exhibit 2, that portion of the catalog marked "X" of the H & H Co., namely, pages 1 to 10, containing matter referring to key sockets,

therein described as wiring devices, and as plaintiff's exhibit 3, page 61-62 of the Arrow catalog, insofar as said page depicts and describes key sockets.

Counsel for the Government thereupon conceded, what was admitted "off the record" at the original trial, that the practice at the port of New York at the present time is to return key sockets of the type involved in this case, as wiring devices dutiable within the provisions of paragraph 353.

We are presently of opinion that our original decision was rendered without a due regard for the differences which exist between the record and claim in the instant case, and the record and claims in the so-called companion case. Specifically, the decision in the *National Carloading* case rested upon a finding of fact, made upon sufficient testimonial evidence to support it, that the there-involved articles were parts of lighting fixtures. That finding of fact made relevant the extended review of the background of, and circumstances under which, paragraph 353 was enacted, as set forth in the *Minami* case, *supra*. The essence of that discussion, which need not here be repeated, spells out a congressional intent to include within the provisions of paragraph 397, *supra*, the basket clause of the metal schedule, illuminating or lighting fixtures, lamps, lamp bases, candelabra, candlesticks, and parts of any of the same.

The views expressed in the *Minami* case, *supra*, would have a bearing upon the instant case only in the event that the articles at bar were established to be parts of lighting fixtures or any other of the items, hereinabove enumerated. But it must be held that the record before us is devoid of any evidence tending to support such a finding.

The record in this case, documentary as well as stipulated, establishes the single ultimate fact that the involved key sockets are wiring devices. Wiring devices are specifically provided for within the second subdivision of paragraph 353, *supra*, and, hence, the merchandise at bar should fall within the scope of that provision.

We are not unmindful of the following quotation from the case of *A. N. Khouri & Bro.* v. *United States*, *supra*, involving floor and base lamps, which, after importation, were wired and equipped with switches, sockets, and bulbs for electric lighting:

Error is assigned upon the exclusion by the trial court of certain testimony and proposed illustrative exhibits. The purpose of introducing this testimony seems to have been to show the association in use of the lamp bases and the tendered exhibits, the latter comprising assemblies necessary to be added for lighting purposes. This was offered upon the theory that articles are classifiable under paragraph 353 by use. As to the first division of paragraph 353, this is correct *United States* v. *R. W. Cramer & Co., Inc.*, 22 C. C. P. A. (Customs) 45, T. D. 47049 (decided concurrently herewith), but we are quite convinced that a mere showing that electric wires are put in the lamps, and that bulbs and other appurtenances essential to ordinary electric lamp lighting are placed therein,

would not serve to bring the lamps within the paragraph. Such wires, bulbs, switches, and sockets are not the character of elements to which we think the paragraph alludes. We find no error in the exclusion of the testimony.

Wires, bulbs, switches, and sockets were not parts of the lamps in their imported condition, and it was not essential to the court's determination of the dutiable status of the merchandise before it to hold that such articles were not "the character of elements to which we think the paragraph [paragraph 353] alludes." That our appellate court itself regarded this latter statement as dictum was expressly acknowledged by it in the *Minami* case, *supra.*

It is not to be supposed that our appellate court would adhere to that point of view with the question squarely before it of whether electrical key sockets, used for turning on and off electrical current, and also for holding bulbs, conceded by the parties to be, and regarded by the trade as, wiring devices, fall within the provision of paragraph 353 for wiring devices.

Upon due consideration and deliberation, we now conclude that the merchandise at bar is dutiable as claimed at the rate of 35 per centum ad valorem, as electrical wiring devices within the provisions of paragraph 353 of the Tariff Act of 1930, and that it is subject also to the assessment of ¾ of 1 cent per pound upon the amount of copper contained therein pursuant to the provisions of section 3425 of the Internal Revenue Code. The claim in the protests is sustained to the extent indicated.

Judgment will be entered accordingly.

### DISSENTING OPINION

Lawrence, Judge: For the reasons assigned *infra*, I respectfully dissent from the decision and judgment expressed by the majority.

In our original decision in this case, reported as *Criterion Lamp & Shade Co.* v. *United States*, 26 Cust. Ct. 408, Abstract 55471, it was the unanimous opinion of the court that the subject merchandise—key electrical sockets—was properly classified by the collector of customs as "Articles or wares not specially provided for, if composed wholly or in chief value of * * * copper * * *, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured," as provided in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 397), upon the authority of *A. N. Khouri & Bro.* v. *United States*, 22 C. C. P. A. (Customs) 28, T. D. 47037, and *United States* v. *N. Minami & Co., Inc.*, 29 C. C. P. A. (Customs) 169, C. A. D. 188, citing also *Globe Lighting Fixture Mfg. Co.* v. *United States*, 16 Cust. Ct. 31, C. D. 980.

Judges Rao and Ford concurred in the conclusion reached in the *Criterion* case, solely by reason of the decision in the *Minami* case, *supra.*

The factual record in this case when formerly before us consisted of exhibit 1, a representative sample of the merchandise in controversy, which, it was agreed between the parties, "consists of key sockets to which electric wires are attached; and that the sockets are used in turning on and off electric current and *also as holders for electric bulbs.*" [Italics supplied.]

It was also stipulated "that the trade catalog, of which the catalog of the Midtown Electric Supply Company is illustrative, described merchandise of the same character as wiring devices." It does not appear, however, that the catalog was introduced in evidence.

In due time after the court rendered its original decision in this case, a rehearing was granted, and at the trial counsel amplified the record by agreeing that—

(1) The electric key sockets are in fact wiring devices and they are known in the trade as wiring devices and they are listed and designated in the trade catalogs as wiring devices.

(2) The said electric key sockets involved in each of these protests are identical.

There were also received in evidence as plaintiff's exhibits 2 and 3 portions of trade catalogs, illustrating and describing key sockets.

The majority in its opinion refers to the fact that at the time the present case was originally before us for decision we also decided the case of *National Carloading Corp.* v. *United States*, 26 Cust. Ct. 173, C. D. 1320, wherein we held that certain metal *push-button* electrical sockets (those in the present case being key electrical sockets) were properly classified for duty as manufactures of base metal pursuant to the provisions of paragraph 397, *supra.*

It is pointed out by the majority that the claims of the plaintiffs in the two cases are distinguishable in that *National Carloading* relied upon the first and third provisions of paragraph 353 while in the *Criterion* case plaintiff relies upon the second provision of said paragraph. Since the *National Carloading* case contained evidence to establish "that the push-button sockets in controversy are in fact parts of lighting fixtures" the court, following the *Minami* and *Khouri* cases, sustained the classification by the collector of customs.

The majority is now of the opinion that our original decision herein "was rendered without a due regard for the differences which exist between the record and the claim in the instant case, and the record and claims in the so-called companion case." Further, the majority states—"Specifically, the decision in the *National Carloading* case rested upon a finding of fact, made upon sufficient testimonial evidence to support it, that the there-involved articles were parts of lighting fixtures."

In my opinion, the record in the instant case contains undisputed evidence that the key sockets in controversy are used not only for

turning on and off electrical current but also "for holding electric bulbs."

While there has been no direct evidence offered as to the ultimate use to which the imported articles are put, nevertheless, there are circumstances from which proper inferences may be drawn with respect to their use.

Moreover, samples are said to be potent witnesses. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029; and *United States* v. *Abercrombie & Fitch Co.*, 20 C. C. P. A. (Customs) 267, T. D. 46060. From a visual examination of the sample, exhibit 1, it is obvious, and it is a matter of common knowledge of which the court may take judicial notice, that such articles are of a class or kind in daily use in connection with lighting fixtures. (31 Corpus Juris Secundum, Evidence, section 9, *et seq.*)

Furthermore, it would seem to be a fundamental concept that a court may take judicial notice of its own records for all proper purposes. (31 Corpus Juris Secundum, Evidence, section 50.) For instance, in the *Minami* case, *supra*, our appellate court, in the course of its opinion, remarked—

With respect to the *Khouri & Bro.* case, *supra*, it seems proper to say at this point that in our study of the instant case we have taken occasion *to reexamine the record which was there presented*, as well as our opinion (written by the writer of the instant opinion), * * *. [Italics supplied.]

If we reexamine the record and opinion in the *National Carloading* case (which is now the subject of a rehearing), it will clearly appear from the description of the merchandise in that case that it is the same in all material respects as the merchandise represented by exhibit 1 herein, with the exception that the articles there were operated by means of a push button whereas in the present instance the manner of operation is by means of a so-called key. If the push-button sockets are of a kind which are excluded from the terms of paragraph 353 (and it is implicit in the opinion of the majority that the push-button sockets in the *National Carloading* case are excluded from paragraph 353), it would seem that an anomalous result would flow from now attempting to distinguish the key sockets of the instant case from the push-button sockets in the *National Carloading* case.

The majority states that the finding of fact in the *National Carloading* case that the articles there involved were parts of lighting fixtures "made relevant the extended review of the background of, and circumstances under which, paragraph 353 was enacted, as set forth in the *Minami* case, *supra*." The historical background of paragraph 353 the majority states—"spells out a congressional intent to include within the provisions of paragraph 397, *supra*, the basket clause of the

metal schedule, illuminating or lighting fixtures, lamps, lamp bases, candelabra, candlesticks, and parts of any of the same.''

That the impact of the court's analysis of the historical congressional background of paragraph 353 may be appreciated, extracts are quoted from the *Khouri* and *Minami* cases, *supra*, from which it will be seen that our appellate court explored the background of paragraph 353 very thoroughly before reaching its conclusions.

The following is quoted from the opinion of the court in the *Khouri* case, which was decided in 1934:

Paragraph 353 of the 1930 act is new to tariff legislation. Its legislative history, as set forth in the brief on behalf of the Government, indicates, we think, that Congress was seeking largely to provide a particular classification for certain types of electrical devices, some of which had been theretofore classified as machines, and others as manufactures of metal, or articles in chief value of metal, and possibly some under still other provisions.

We do not find in it, however, any language which seems to us to show a legislative intent of bringing lamp bases, or unfinished lamps, under said paragraph as "parts" of any of the numerous things for which provision is there made. We do not understand that there is any claim here that lamps, or lamp bases, are *ejusdem generis* with any of the articles *eo nomine* mentioned in said paragraph 353. The argument is rather to the effect that since the paragraph provides for "electrical * * * wiring * * * apparatus, instruments * * * and devices; * * * and parts thereof, finished or unfinished * * *," and since it is essential to wire lamps of the kind here at issue in order to furnish light, the language is broad enough to include them. The suggestion is that the wire, with other appurtenances, is suitable for distributing electrical energy and does distribute it.

In the sense that the electric current passes by means of a wire there is a distribution in a broad sense, but as used in said paragraph 353, we think "articles suitable for * * * distributing electrical energy" obviously must be given the technical meaning appertaining to the art, and that means through or over which electrical current merely passes were not intended to be included therein. Electrical distributors have a well-understood meaning in the art. Webster's New International Dictionary gives as one definition of distributor:

An apparatus for distributing an electric current, either to various points in rotation, as in some motors, or along two or more lines in parallel, as in a distributing system.

We do not regard the lamps or lamp bases here at issue as being the type of electrical apparatus, instrument, or device intended to be covered by the paragraph.

* * * a mere showing that electric wires are put in the lamps, and that bulbs and other appurtenances essential to ordinary electric lamp lighting are placed therein, would not serve to bring the lamps within the paragraph. Such wires, bulbs, switches, and sockets are not the character of elements to which we think the paragraph alludes. * * *

We do not regard the imported articles as being parts of anything provided for in paragraph 353 of the Tariff Act of 1930.

In the *Minami* case, which was decided in 1941, the court again referred to the legislative history of paragraphs 353 and 397 and made the following observations:

We may say here that this court has regarded paragraph 353 of the Tariff Act of 1930, *supra* (which was new in that act), or at least parts of it, as being ambiguous, and in different decisions recourse has been had to its legislative history as an aid in construing it. *United States* v. *R. W. Cramer & Co., Inc.,* 22 C. C. P. A. (Customs) 45, T. D. 47049; *Ralph C. Coxhead Corp.* v. *United States,* 22 C. C. P. A. (Customs) 96, T. D. 47080. In the *Khouri & Bro.* case, *supra,* the legislative history was referred to but not recited.

Reference may be had to those decisions for such legislative history as was deemed pertinent in those cases. Much of it has little bearing on the issue now before us and need not be repeated.

Such legislative history as is deemed particularly pertinent here may be stated as follows:

H. R. 2667, which eventuated in the Tariff Act of 1930, as reported from the Committee on Ways and Means and as it passed the House, carried a paragraph numbered 387 which read:

> PAR. 387. Illuminating or lighting fixtures, lamps, lamp bases, candelabra, and candlesticks, any of the foregoing and parts thereof, finished or unfinished, not specially provided for, if wholly or in chief value of base metal or alloy, 50 per centum ad valorem; if wholly or in chief value of, or plated with, platinum, gold, or silver, 65 per centum ad valorem.

No special reference was made to it in the report of the Committee on Ways and Means which accompanied the bill, but it was printed in italics in the report, thus indicating it to be a change from the Tariff Act of 1922.

In the report of the Senate Committee on Finance which accompanied the bill when reported to the Senate (Senate Report No. 37, 71st Congress, 1st session, page 19) the following appears:

### Paragraph 387.—Lighting Fixtures

> Provision for lighting fixtures has been eliminated with the intent of making them dutiable under the basket paragraph 398.

That number—398—referred to the bill as it was laid before the Senate. In the subsequent renumbering of paragraphs in the act, it became No. 397, under which the merchandise here at issue was classified by the collector. It corresponds to paragraph 399 of the 1922 act.

In addition to the foregoing a statement was contained in that portion of the Senate committee's report relating to paragraph 353 which read:

> It is not intended that this paragraph should include lighting fixtures, provided for in paragraph 387 of the House bill, and eliminated therefrom by the Senate committee.

After the bill, H. R. 2667, had passed both Houses of Congress and before the conferences between managers of the respective Houses were held, the United States Tariff Commission prepared a supplement to tariff information relating to items in the bill which were subject to conference. Reports of the United States Tariff Commission, vol. 29. The discussion of paragraph 353 begins on page 198 of the volume. While that discussion is interesting, such of it as might be regarded as having any bearing upon the instant case is expressed in the committee reports and need not be quoted here.

The discussion of the stricken paragraph 387 of the House bill is found on page 232 of vol. 29, Tariff Commission Report, where it is said, *inter alia:*

> Under the act of 1922 and bill as passed by the Senate, lighting fixtures, lamps, candlesticks, and candelabra are dutiable as manufactures of metal, n. s. p. f. In the House bill special provision was made for them, but the

same rates of duty were provided that were levied in the basket clause in that bill. In the Senate the paragraph was eliminated, thereby returning the articles to the general provision in paragraph 398.

In the statement of the managers on the part of the House, filed in connection with the conference report (H. R. Report 1892, 71st Congress, 2nd session) at page 64, it was said that the effect of striking out the paragraph 387 (to which the House agreed) was "to throw the items into the basket clause of the metal schedule."

From the foregoing it is our tentative view that it was not the intention of Congress to include lighting fixtures, even though of an electrical character, in paragraph 353, but that it was intended that they should be classified under what eventually became paragraph 397. It is true that there is no reference in paragraph 397 to articles having an electrical element, but unless it was intended to include therein some articles having such an element, much of the discussion of paragraph 353—the electrical paragraph—by the Senate Committee's report above quoted would seem to be without meaning.

\*       \*       \*       \*       \*       \*       \*

\* \* \* It may be remarked, incidentally, that such history would seem to support the conclusion reached by both the trial court and this court in the *Khouri & Bro.* case, *supra* [22 C. C. P. A. (Customs) 28, T. D. 47037], although it was not recited in our decision there.

## In the course of its opinion in this case, the majority states:

The record in this case, documentary as well as stipulated, establishes the single ultimate fact that the involved key sockets are wiring devices. Wiring devices are specifically provided for within the second subdivision of paragraph 353, *supra*, and, hence, the merchandise at bar should fall within the scope of that provision.

It does not necessarily follow that because the articles are, in fact, wiring devices that as a matter of law they should be so classified in paragraph 353. Our appellate court has clearly indicated in the *Khouri* case, *supra*, that—

\* \* \* a mere showing that electric wires are put in the lamps, and that bulbs and other appurtenances essential to ordinary electric lamp lighting are placed therein, would not serve to bring the lamps within the paragraph.

Then the court added significantly—"Such wires, bulbs, switches, and sockets are not the character of elements to which we think the paragraph alludes."

Moreover, it is very obvious from an examination of the opinions in the *Khouri* and *Minami* cases that in the appellate court's analysis of paragraph 353 it was drawing no distinction between the various subdivisions of the paragraph in arriving at its conclusion.

In the course of its opinion in the present case, the majority further observes—

It is not to be supposed that our appellate court would adhere to that point of view with the question squarely before it of whether electrical key sockets, used for turning on and off electrical current, and also for holding bulbs, conceded by the parties to be, and regarded by the trade as, wiring devices, fall within the provision of paragraph 353 for wiring devices.

Although our appellate court in the *Minami* case stated that the *Khouri* opinion "contained certain *dicta* not essential to the decision," it did not in any way indicate its repudiation of the views expressed therein. Therefore, I am not willing to speculate upon what the court might do "with the question squarely before it," since it is an unmistakable fact that in the *Khouri* case our appellate court expressed its considered opinion that paragraph 353 did not include wires, bulbs, switches, and *sockets*, and, 7 years later, in the *Minami* case, after a searching analysis of the congressional history surrounding paragraph 353, stated that "it was not the intention of Congress to include lighting fixtures, even though of an electrical character, in paragraph 353."

While it appears from the record that sockets like those in controversy would now be returned by the collector of customs at the port of New York as wiring devices pursuant to the provisions of paragraph 353, *supra*, there is no evidence indicating how such articles would be classified by the collectors of customs at other ports.

For the foregoing reasons and upon the authority of the *Khouri* and *Minami* cases, I am of the opinion that the protests should be overruled.